No. 26-7197

# United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT

Etrak İnşaat Taahhüt ve Ticaret Anonim Şirketi,

*Plaintiff-Appellee*

- *v* -

State of Libya,

*Defendant*

- and -

National Oil Corporation of Libya,

*Non-Party-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CASE NO. 22-cv-864 (HON. JIA M. COBB)

## NATIONAL OIL CORPORATION OF LIBYA'S OPPOSITION TO ETRAK'S MOTION TO DISMISS APPEAL

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
JOSEPH D. PIZZURRO
JUAN O. PERLA
ROBERT J. GROOT
1875 K Street NW, Suite 425
Washington, D.C. 20006
(202) 452-7373
jpizzurro@curtis.com
*Attorneys for Non-Party-Appellant National Oil Corporation of Libya*

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........ ii

**INTRODUCTION** ........ 1

**FACTUAL AND PROCEDURAL BACKGROUND** ........ 5

**ARGUMENT** ........ 8

I. The District Court's Order is Immediately Appealable Under the Collateral Order Doctrine ........ 8

A. Etrak's Allegations Are Legally Insufficient to Establish Jurisdiction ........ 14

1. General Allegations of Control Do Not Establish an Exception to Immunity Under the FSIA or an Alter Ego Relationship ........ 14

2. The District Court's Ancillary Jurisdiction Does Not Extend to a Determination of NOC's Alleged Alter Ego Status ........ 18

**CONCLUSION** ........ 21

# TABLE OF AUTHORITIES

**Cases**

*Agudas Chasidei Chabad of United States v. Russian Federation*,
19 F.4th 472 (D.C. Cir. 2021) ....................................................................8

*Beecham v. Socialist People's Libyan Arab Jamahiriya*,
424 F.3d 1109 (D.C. Cir. 2005) .............................................................. 12, 13

*Belhas v. Moshe Ya'Alon*,
515 F.3d 1279 (D.C. Cir. 2008) ....................................................................11

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
581 U.S. 170 (2017) ..............................................................................8, 13

*Bridas S.A.P.I.C. v. Government of Turkmenistan*,
447 F.3d 411 (5th Cir. 2006)............................................................ 10, 14, 15

*Butler v. Sukhoi Co.*,
579 F.3d 1307 (11th Cir. 2009)................................................... 10, 11, 14, 16

*Casa Express Corp. v. Bolivarian Republic of Venezuela*,
158 F.4th 1176 (11th Cir. 2025)....................................................................20

*El-Fadl v. Cent. Bank of Jordan*,
75 F.3d 668 (D.C. Cir. 1996) ........................................................................11

*EM Ltd. v. Banco Cent. de la República Argentina*,
800 F.3d 78 (2d Cir. 2015)................................................................... 10, 14

*First National City Bank v. Banco Para El Comercio Exterior de Cuba*,
462 U.S. 611 (1983) ..............................................................................2, 14

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*,
905 F.2d 438 (D.C. Cir. 1990) ....................................................................14

*France.com, Inc. v. French Republic*,
992 F.3d 248 (4th Cir. 2021)........................................................................11

*Goodman Holdings v. Rafidain Bank*,
26 F.3d 1143 (D.C. Cir. 1994) ....................................................................10

*Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*,
784 F.3d 804 (D.C. Cir. 2015) ....................................................................13

*Hercaire Int'l, Inc. v. Argentina*,
821 F.2d 559 (11th Cir. 1987).....................................................................15

*In re Grand Jury Subpoenas*,
871 F.3d 141 (2d Cir. 2017) ..........................................................................9

*Mwani v. Osama Bin Laden*,
417 F.3d 1 (D.C. Cir. 2005)..........................................................................10

*Nyambal v. Int'l Monetary Fund*,
772 F.3d 277 (D.C. Cir. 2014) ......................................................................10

*Olympic Chartering S.A. v. Ministry of Industry and Trade of Jordan*,
134 F. Supp. 2d 528 (S.D.N.Y. 2000) ............................................................9

*Olympic Chartering S.A. v. Ministry of Industry and Trade of Jordan*,
134 F. Supp. 2d 528 (S.D.N.Y. 2001) ............................................................9

*Peacock v. Thomas*,
516 U.S. 349 (1996) ............................................................... 4, 18, 20

*Peninsula Asset Mgmt. (Cayman) v. Hankook Tire Co.*,
476 F.3d 140 (2d Cir. 2007) ..........................................................................8

*Peterson v. Bank Markazi*,
121 F.4th 983 (2d Cir. 2024)................................................................. 19, 20

*Peterson v. Islamic Republic of Iran*,
563 F. Supp. 2d 268 (D.D.C. 2008) ..........................................................9, 11

*Process & Indus. Devs. v. Federal Republic of Nigeria*,
962 F.3d 576 (D.C. Cir. 2020) ........................................................................8

*Rodriguez v. Pan Am. Health Org.*,
187 F. 4th 516 (D.C. Cir. 2026) ..................................................... 1, 3, 12, 13

*Rodriguez v. Pan Am. Health Org.*,
29 F.4th 706 (D.C. Cir. 2022) ...................................................................1, 12

*Rodriguez v. Pan Am. Health Org.*,
502 F. Supp. 3d 200 (D.D.C. 2020) ....................................................................12

*United States v. Morton Salt Co.*,
338 U.S. 632 (1950) ..................................................................................................8

**Statutes**

28 U.S.C. § 1291 .........................................................................................................1

28 U.S.C. § 1603(b) .....................................................................................................5

28 U.S.C. § 1605(a)(6)..........................................................................................9, 17

## INTRODUCTION

It is indisputable that an order denying a foreign sovereign defendant's facial challenge to subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA") is immediately appealable as a final collateral order under 28 U.S.C. § 1291. The very case relied upon by Appellee, *Rodriguez v. Pan Am. Health Org.*, confirms that well-settled rule. 187 F. 4th 516, 522 (D.C. Cir. 2026) ("*Rodriguez II*"); *see also Rodriguez v. Pan Am. Health Org.*, 29 F.4th 706, 711 (D.C. Cir. 2022) ("*Rodriguez I*"). That is the situation here, and so there can be no doubt that appellate jurisdiction is proper.

Appellant National Oil Corporation of Libya ("NOC") is a separate agency or instrumentality of the State of Libya ("Libya") as defined in the FSIA, and as such, is immune from a U.S. court's jurisdiction under the FSIA unless one of that statute's enumerated exceptions to immunity applies. Appellee Etrak İnşaat Taahhüt ve Ticaret Anonim Şirketi ("Etrak") has not and cannot satisfy any of those exceptions as to NOC, because even accepting all of Etrak's factual allegations about NOC as true, they are insufficient to abrogate NOC's immunity as a matter of law.

NOC is a complete stranger to the action below in which Etrak obtained a judgment confirming an arbitral award solely against Libya. The only plausible exception to sovereign immunity that could apply to NOC in this action is the arbitration exception. But NOC had no involvement in the underlying arbitration or

the claims giving rise to the arbitral award. NOC is not named in the award, and Etrak did not seek to confirm the award against NOC.

Despite the fact that NOC has no connection whatsoever to this action, Etrak issued subpoenas to NOC, NOC's employees, and third party institutions, seeking extensive discovery into NOC's business affairs, assets, and corporate structure in a transparent attempt to shift liability on the judgment to NOC and identify and execute on its assets to satisfy that judgment. The FSIA immunizes NOC from that process, and accordingly, NOC moved for a protective order on various grounds including sovereign immunity. Etrak opposed this motion by arguing that NOC was not entitled to immunity because NOC is allegedly Libya's "alter ego" under *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*"), and Libya's immunity had already been abrogated under the arbitration exception. Etrak supported its alter ego theory with general allegations concerning Libya's control over NOC's business and operations, without tying the alleged control in any way whatsoever to the arbitration or Etrak's underlying claim or to an exception to sovereign immunity.

The district court rejected NOC's arguments that Etrak's allegations about NOC are legally insufficient to abrogate its FSIA immunity. It is from that order that NOC appeals under the collateral order doctrine. There is no exception to collateral

order review simply because a denial of sovereign immunity occurs in the discovery context, and Etrak cites no authority to the contrary.

Rather, Etrak attempts to conflate NOC's *facial* challenge with a *factual* challenge because the district court also ordered NOC to engage in "jurisdictional discovery" on Etrak's alter ego allegations. Etrak misleadingly argues that orders granting jurisdictional discovery to resolve disputed factual issues are not immediately appealable. That argument is unavailing because NOC has not yet had an opportunity to obtain appellate review of the denial of its facial challenge to the court's jurisdiction based on sovereign immunity. That is what this appeal is about. As this Court has recognized, it would frustrate the purpose of jurisdictional immunity to force a foreign state to wait until after jurisdictional discovery to review a denial of sovereign immunity as a matter of law. *See Rodriguez II*, 187 F.4th at 523.

The jurisdictional discovery order also exceeded the district court's ancillary post-judgment jurisdiction. Because Etrak is attempting to shift liability on the judgment against Libya to NOC, Dkt. No. 68[1] at 14, 26-28, Supreme Court precedent requires Etrak to establish an independent basis for subject matter jurisdiction to enforce the judgment against a non-party on a veil-piercing theory. *Peacock v.*

[1] Citations to "Dkt. No." are to the docket in the court below (No. 1:22-cv-864 (JMC)).

*Thomas*, 516 U.S. 349 (1996). And because the FSIA is the only basis for jurisdiction over a foreign state's corporate instrumentality, the only way to do that here would be to find that an exception to immunity applies independently to NOC. Etrak's alter ego allegations untethered to any exception to sovereign immunity fail as a matter of law. Moreover, Etrak would have to properly bring NOC before the district court by naming NOC as a defendant and serving NOC under the FSIA. Etrak failed to take any of those steps.

Lastly, the question of whether appellate jurisdiction is proper fully overlaps with the merits of NOC's appeal. That is because this Court undeniably has appellate jurisdiction to the extent the order appealed from denies NOC's sovereign immunity as a matter of law, and the core question presented by NOC's appeal is whether its sovereign immunity has been denied as a matter of law. A dismissal for lack of appellate jurisdiction with a remand to proceed with jurisdictional discovery would amount to a rejection of NOC's facial challenge on sovereign immunity grounds, without full briefing and oral argument. This Court should not decide NOC's meritorious appeal and depart from longstanding precedent by motion.

Etrak's motion to dismiss should be denied outright. At the very least, the question of appellate jurisdiction should be referred to the merits panel.

## FACTUAL AND PROCEDURAL BACKGROUND

There is no dispute that NOC is a separate Libyan entity formed under the laws of, and wholly owned by, Libya, thus qualifying as an "agency or instrumentality" of Libya. *See* 28 U.S.C. § 1603(b).

This is an action to enforce an arbitral award obtained by Etrak against Libya in an International Chamber of Commerce arbitration seated in Geneva, Switzerland in 2019. Etrak's arbitration claims arose out of a series of public construction projects conducted in Libya pursuant to contracts made with various Libyan authorities. *See* Dkt. No. 1, ¶¶ 16-20. NOC was not a party to any of those contracts, and played no role in the performance or administration of those contracts. *See* Final Award, Etrak İnşaat Taahhüt Ve Ticaret Anonim Şirketi v. State of Libya, dated July 22, 2019, (Dkt. No. 1-3). NOC was not named as a party in the arbitration, took no part in the arbitration, and was not named in the award. *See* Dkt. No. 1, ¶¶ 2-34. The award was issued against Libya in the amount of $21,865,554 in damages, plus interest and arbitration costs. *See* Dkt. No. 1, ¶ 29.

On March 22, 2022, Etrak filed this action in the district court against Libya to enforce the arbitral award. Dkt. No. 1. NOC was not named as a defendant in the enforcement action. On March 3, 2025, the district court entered judgment on the award against Libya in the amount of $30,128,994.40, plus post-judgment interest at the statutory rate. Dkt. No. 39.

Following entry of judgment, Etrak initiated post-judgment discovery to identify assets available for enforcement of the judgment. As part of that discovery, Etrak sought information and documents about NOC's assets and corporate relationship with Libya through subpoenas issued directly to NOC, as well as to NOC's employees and certain third-parties. Dkt. No. 66-3, Exhs. 1-14.

On December 22, 2025, NOC moved for a protective order seeking to quash the subpoena issued to it and to preclude Etrak from obtaining discovery from any party into NOC's business affairs, assets, or corporate structure. Dkt. No. 66-1 at 10. NOC asserted its sovereign immunity, arguing that the district court lacked subject matter jurisdiction to enforce the subpoena against NOC, and that Etrak was not entitled to any discovery about NOC because NOC was not liable for the judgment. *Id.* at 7-10.

On January 5, 2026, Etrak filed its opposition to NOC's motion (Dkt. No. 68) alleging for the first time that NOC was the "alter ego" of Libya and that this entitled Etrak to seek discovery from NOC and other parties about NOC's assets for purposes of enforcing the judgment against NOC and its assets. *Id.*; Dkt. No. 67 at 13. Etrak submitted various factual exhibits supposedly demonstrating this alter ego relationship, and made generalized allegations concerning NOC's relationship to, and control by, Libya. Notably, Etrak did not allege that NOC had any involvement in the events giving rise to Etrak's claims or Etrak's arbitration against Libya.

On January 12, 2026, NOC replied in support of its motion that even if Etrak's factual allegations were accepted as true, they would not confer subject matter jurisdiction on the district court over any matter involving NOC because those allegations could not support the application of any exception to NOC's immunity under the FSIA. Dkt. No. 69 at 10-15. NOC also argued that under *Peacock* the district court's ancillary post-judgment jurisdiction did not extend to an attempt to shift liability on the judgment to NOC on a theory of alter ego. Dkt. No. 69 at 6-11.

On January 22, 2026, Etrak filed a motion for leave to file to a surreply, which attempted to rebut NOC's facial challenges to the district court's jurisdiction. Dkt. No. 75-1. On February 5, 2026, NOC responded to note that Etrak had no valid grounds to submit the proposed surreply, but that NOC nevertheless did not oppose its submission because the district court had an obligation to consider any materials relevant to determining its subject-matter jurisdiction. Dkt. No. 81. On February 12, 2026, Etrak filed a brief reply. Dkt. No. 87.

On September 4, 2026, the district court issued an order denying NOC's motion for a protective order, and ordering NOC to participate in jurisdictional discovery to determine whether Etrak could establish the factual allegations underlying its contention that NOC is the alter ego of Libya. Dkt. No. 106. That order is a rejection of NOC's assertion that, even accepting Etrak's allegations as

true for the purposes of its motion, they are insufficient to abrogate NOC's immunity as a matter of law.

## ARGUMENT

### I. The District Court's Order is Immediately Appealable Under the Collateral Order Doctrine

It is well-settled that any order denying or infringing upon the sovereign immunity of a foreign state, no matter how slight, impermissibly subjects that sovereign to the burdens of litigation and is immediately appealable under the collateral order doctrine. *See Process & Indus. Devs. v. Federal Republic of Nigeria*, 962 F.3d 576, 581 (D.C. Cir. 2020) (sovereign immunity is "not only a defense from liability but also a shield from" "the attendant burdens of litigation"); *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 179 (2017) (purpose of immunity is to "respect the independence and dignity" of other nations).

The enforcement of a subpoena against a sovereign infringes on its immunity, and is therefore appealable under the collateral order doctrine. *See Agudas Chasidei Chabad of United States v. Russian Federation*, 19 F.4th 472, 476-77 (D.C. Cir. 2021) (holding that collateral order review was available on denial of motion to quash subpoena); *Peninsula Asset Mgmt. (Cayman) v. Hankook Tire Co.*, 476 F.3d 140, 143 (2d Cir. 2007) (citing *United States v. Morton Salt Co.*, 338 U.S. 632, 642 (1950) (stating that judicial subpoena power "is subject to those limitations inherent

in the body that issues them")); *Olympic Chartering S.A. v. Ministry of Industry and Trade of Jordan*, 134 F. Supp. 2d 528, 535-36 (S.D.N.Y. 2000) (Report & Recommendation) (quashing judgment creditor's subpoena to private bank regarding information about non-party agency or instrumentality of foreign state), *adopted by* 134 F. Supp. 2d 528 (S.D.N.Y. 2001); *In re Grand Jury Subpoenas*, 871 F.3d 141, 146 (2d Cir. 2017) (accepting jurisdiction of collateral order appeal of denial of third-party's motion to quash subpoena on grounds of diplomatic immunity); *cf. Peterson v. Islamic Republic of Iran*, 563 F. Supp. 2d 268, 275 (D.D.C. 2008).

In opposing NOC's motion for a protective order, Etrak first raised its alter ego allegations as an attempt to establish the district court's jurisdiction over NOC. These allegations are therefore analogous to the jurisdictional allegations normally pleaded in a complaint. NOC, in response, raised facial challenges to jurisdiction by accepting (for purposes of its challenges) Etrak's factual allegations as true, but arguing that those allegations did not establish an exception to NOC's immunity under the FSIA. Specifically, NOC argued that the only exception that could plausibly apply would have been the arbitration exception, 28 U.S.C. § 1605(a)(6), but this exception could not apply to NOC because Etrak made no allegation that NOC was somehow liable on the arbitral award against Libya. Rather, Etrak made only generalized allegations concerning Libya's control over NOC that were legally

insufficient to support a finding that NOC was liable on the award as the alter ego of Libya. *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006) (requiring for alter ego finding a showing that control was exercised with respect to transaction at issue); *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1313-14 (11th Cir. 2009) (general alter ego allegation insufficient to establish exception to immunity).

Where, as here, a plaintiff's allegations are insufficient as a matter of law to abrogate immunity, the plaintiff is not entitled to jurisdictional discovery, and any order granting such discovery is appealable as a collateral order. *See Nyambal v. Int'l Monetary Fund*, 772 F.3d 277, 280-83 (D.C. Cir. 2014) (reversing grant of jurisdictional discovery because plaintiff failed to adequately plead exception to IOIA immunity); *Mwani v. Osama Bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005) (denying jurisdictional discovery when "even assuming [the defendant] engaged in all of the conduct alleged" no exception to FSIA immunity would apply); *Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1147 (D.C. Cir. 1994) (affirming that jurisdictional discovery not warranted where the court could "not see what facts additional discovery could produce that would affect our jurisdictional analysis[.]"); *EM Ltd. v. Banco Cent. de la República Argentina*, 800 F.3d 78, 88 (2d Cir. 2015) (if exception fails "as a matter of law" "it would be inconsistent with the underlying purpose of the foreign-sovereign-immunity doctrine to subject [the sovereign] to

further burdensome litigation."); *Belhas v. Moshe Ya'Alon*, 515 F.3d 1279, 1290 (D.C. Cir. 2008) (unnecessary jurisdictional discovery would "frustrate the significance and benefit of entitlement to immunity from suit.") (quoting *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 671 (D.C. Cir. 1996)); *Butler*, 579 F.3d at 1314-15 (no jurisdictional discovery when alter ego allegations, even "if proven through additional discovery, would not demonstrate a basis for jurisdiction"); *France.com, Inc. v. French Republic*, 992 F.3d 248, 252 (4th Cir. 2021) (district court abused discretion by delaying ruling on legal sufficiency of immunity exception until after jurisdictional discovery); *Peterson*, 563 F. Supp. 2d at 274 ("jurisdictional discovery should be permitted only if it is possible that the plaintiff could demonstrate the requisite jurisdictional facts sufficient to constitute a basis for jurisdiction and it should not be allowed when discovery would be futile.") (citation omitted).

Nevertheless, despite the clear legal insufficiency of Etrak's claims, the district court issued an order that failed to adjudicate NOC's facial challenges, and instead ordered jurisdictional discovery to address whether Etrak had established the factual grounds for its alter ego allegations. The premise of this order was that if Etrak could prove its factual allegations, that would be legally sufficient for jurisdiction over NOC as the alter ego of Libya. Thus, the district court's order was effectively a denial of NOC's immunity and intended to subject NOC to further proceedings. This entitled NOC to an immediate appeal.

Etrak nevertheless contends that collateral order review is foreclosed by this Court's decisions in *Rodriguez II* and *Beecham v. Socialist People's Libyan Arab Jamahiriya*, 424 F.3d 1109 (D.C. Cir. 2005), which, according to Etrak, denied review of jurisdictional discovery orders "materially identical" to the one at issue here. Mot. at 9, 18. However, Etrak misstates the holdings of these cases. *Rodriguez* actually involved two separate appeals from denials of separate motions to dismiss in which the defendant Pan American Health Organization (PAHO), asserted immunity under the International Organizations Act. PAHO first filed a motion to dismiss making a facial challenge to the assertion of jurisdiction, which the district court partially denied. *Rodriguez v. Pan Am. Health Org.*, 502 F. Supp. 3d 200, 211 (D.D.C. 2020), *aff'd*, 29 F.4th 706 (D.C. Cir. 2022). After PAHO appealed, this Court accepted appellate jurisdiction. *Rodriguez I*, 29 F.4th at 711. Then, on affirmance and remand, PAHO filed a separate "factual" motion to dismiss challenging the factual allegations in the complaint upon which the plaintiff had based its assertion of jurisdiction. At that point the district court ordered limited jurisdictional discovery. *See Rodriguez II*, 187 F.4th at 519. PAHO appealed that order as well, but this time this Court held that it lacked jurisdiction over the appeal because the jurisdictional discovery at issue was not appealable in the specific context of that factual motion to dismiss. *Id.* at 520-24.

This case is procedurally analogous to *Rodriguez I* because NOC has asserted facial challenges to jurisdiction that do not dispute Etrak's factual allegations. Therefore, just as in *Rodriguez I*, NOC is entitled to immediate appeal of the district court's order denying those challenges.[2] *See also Rodriguez II*, 29 F. 4th at 524 (confirming earlier district court determination that "plaintiff adequately pleaded an exception" to immunity was "itself appealable" "and was appealed here"); *Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*, 784 F.3d 804, 810-11 (D.C. Cir. 2015) (hearing interlocutory appeal from decision on only one element of the FSIA's expropriation exception to immunity, even though district court had not yet determined whether that exception had been satisfied), *rev'd on other grounds*, 581 U.S. 170 (2017).

*Beecham* is similarly irrelevant because there the defendant pressed a factual challenge to jurisdiction, and this Court declined appellate jurisdiction for the reasons expressed in *Rodriguez II*. *See Beecham*, 424 F.3d at 1110-11.

In this appeal, NOC seeks resolution of the denial of its facial challenges, which are set forth below in detail.

[2] NOC reserves all rights to later challenge Etrak's factual allegations, including by presenting affirmative evidence refuting those allegations.

A. Etrak's Allegations Are Legally Insufficient to Establish Jurisdiction

1. *General Allegations of Control Do Not Establish an Exception to Immunity Under the FSIA or an Alter Ego Relationship*

Jurisdiction over NOC based on an alter ego premise must independently fit within an enumerated exception to sovereign immunity under the FSIA. *See Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 445, 449-52 (D.C. Cir. 1990) (remanding to district court to determine whether principal-agent relationship existed while separately assessing whether purported principal's actions fell under the commercial activity exception to immunity); *EM Ltd.*, 800 at 96 n.86 (finding that even if alter ego relationship were established, the court must independently determine whether the waiver exception to immunity could be imputed to the purported alter ego). Therefore Etrak's assertion of alter ego status based only on general allegations that Libya controls NOC's business and finances, without any connection between that control and conduct covered by an exception to immunity, is legally insufficient to establish jurisdiction over NOC as a putative alter ego under the FSIA. *See Bridas*, 447 F.3d at 416; *Butler*, 579 F.3d at 1313-14.

Etrak's general allegations of control are legally insufficient to establish an alter ego relationship under *Bancec* because control by itself cannot overcome the presumption of separateness. Rather, *Bancec* states that the presumption of separateness may be overcome "where a corporate entity is so extensively controlled by its owner that a relationship of *principal and agent* is created." 460 U.S. at 629

(emphasis added). Such a relationship is established only where the government instrumentality has acted as alter ego of the foreign state *with respect to the underlying transaction*. *See Bridas*, 447 F.3d at 416; *Hercaire Int'l, Inc. v. Argentina*, 821 F.2d 559, 563, 565 (11th Cir. 1987) (rejecting execution of assets against foreign state airline "where the airline was neither a party to the litigation nor was in any way connected with the underlying transaction giving rise to the suit.").

In *Bridas*, the Fifth Circuit addressed the alter ego standard used to determine whether a non-signatory sovereign state was bound by an arbitration agreement entered into by a state-owned oil and gas company, thereby rendering the state liable on an award against that state-owned company. 447 F.3d at 416. The court recognized that the "alter ego doctrine, like all variations of piercing the corporate veil doctrine, is reserved for exceptional cases." *Id.* Applying this doctrine under *Bancec*, the court held that an alter ego finding requires that "the owner exercised complete control over the corporation **with respect to the transaction at issue** . . . ." *Id.* (emphasis added) (citation omitted).

Here, Etrak does not allege that Libya's supposed control of NOC was connected to any transaction at issue in the arbitral award. Nor could it – as Etrak concedes, NOC had no involvement in the events giving rise to Etrak's claims against Libya, much less acted as Libya's agent. Therefore, Etrak's allegation of

"extensive control" that supposedly creates a relationship of "principal and agent" fails as a matter of law.

The Eleventh Circuit in *Butler* rejected an attempt to impose alter ego liability on foreign state entities in an enforcement proceeding. 579 F.3d at 1312-14. There, based on generalized allegations of alter ego, the plaintiffs sought to enforce a default judgment rendered against an instrumentality of the Russian Federation against Russia itself as well as several other Russian instrumentalities, all of which were non-parties to the original action. *Id.* at 1310. Those defendants asserted immunity under the FSIA. *Id.* The plaintiffs requested "limited jurisdictional discovery as to the alter ego basis for subject matter jurisdiction . . . ." *Id.* at 1311. The district court initially granted that jurisdictional discovery but the Eleventh Circuit reversed, explaining that allegations of alter ego alone did not establish any of the FSIA's statutory exceptions to immunity. *Id.* at 1313. For an exception to immunity to apply to the alter ego, the plaintiff must allege "conduct" that brings the putative alter ego "within one of the statutorily defined exceptions." *Id.* (citation omitted). Thus, there was no basis to grant the plaintiffs "jurisdictional discovery" on alter ego because their allegations, even "if proven through additional discovery, would not demonstrate a basis for jurisdiction in any event." *Id.* at 1315.

Here, Etrak's alter ego allegations likewise, even if supported with evidence, would not establish an exception to immunity. As in *Butler*, Etrak can establish

subject matter jurisdiction over its claim against NOC only by establishing that an independent exception to immunity applies *with respect to NOC*. The only FSIA exception that could plausibly apply here is the arbitration exception. 28 U.S.C. § 1605(a)(6). Dkt. No. 1, ¶ 8; Dkt. No. 75-1 at 5. Thus, Etrak must show that Libya used NOC as its agent or alter ego in a manner that would render NOC liable on the resulting arbitral award. Etrak has never made such an allegation, and it is clear that it cannot. NOC was not a party to the underlying dispute between Libya and Etrak. It was not a party to the underlying contracts or a participant in the dispute in any way. It was not named by Etrak as a party in the arbitration, did not participate in the arbitration, and has not been named as a party in these proceedings. Dkt. No. 1, ¶¶ 3-4, 16-19, 23-30. Thus, Etrak's factual allegations, even if proven, would not provide an exception to immunity and are irrelevant to this Court's jurisdiction over NOC.[3]

NOC's motion for a protective order should have been granted as a matter of law, and no jurisdictional discovery should have been ordered because no possible facts could support the district court's exercise of subject matter jurisdiction over any process against NOC.

---

[3] Tellingly, Etrak has sought discovery related only to NOC's assets, business, general relationship with Libya, and other issues that could not possibly be relevant to the jurisdictional inquiries.

2. *The District Court's Ancillary Jurisdiction Does Not Extend to a Determination of NOC's Alleged Alter Ego Status*

The district court's order granting discovery on Etrak's allegations of alter ego are also beyond its ancillary jurisdiction in post-judgment proceedings.

In *Peacock v. Thomas*, the Supreme Court distinguished between the district court's post-judgment proceedings to enforce a judgment by executing against property of the judgment debtor, and attempts to shift liability on that judgment to a third-party on a theory of alter ego, which do not come within a district court's ancillary jurisdiction. 516 U.S. 349, 354-60 (1996). *Peacock* requires an independent basis for subject-matter jurisdiction any time a judgment creditor attempts to enforce a judgment against a third party on the ground that the third party's separateness should be disregarded, such as through veil-piercing and alter ego theories. *Id.* at 353-54.

Here, as in *Peacock*, Etrak has a judgment against only Libya but seeks to shift liability for that judgment to NOC as an alleged alter ego. *See* Dkt. No. 68 at 14, 26-28. *Peacock* therefore requires that Etrak demonstrate an independent basis for subject matter jurisdiction apart from the district court's ancillary jurisdiction. In short, any adjudication of an alter-ego relationship between Libya and NOC, including discovery to aid in that determination, are beyond the ancillary jurisdiction of the district court.

The Second Circuit recently applied *Peacock* to reject plaintiffs' efforts to enforce a judgment against the Islamic Republic of Iran by reaching assets of Bank Markazi, Iran's central bank and non-party to the judgment, on a theory of alter ego. *Peterson v. Bank Markazi*, 121 F.4th 983 (2d Cir. 2024). The parties did not dispute that Bank Markazi was an agency or instrumentality of Iran under the FSIA, and that no provision of the FSIA stripped Bank Markazi of its jurisdictional immunity in the judgment enforcement proceedings. *Id.* at 994. The plaintiffs nevertheless argued that the district court possessed ancillary subject-matter jurisdiction to order turnover of Bank Markazi's assets because Bank Markazi was allegedly Iran's "alter ego," and therefore jurisdiction to order turnover derived from the jurisdiction in the merits action. *Id.* at 998-99.

The Second Circuit rejected that argument, finding that Bank Markazi was "neither the custodian of the [a]ssets nor the judgment debtor, given that it was not a party to the cases in which the [p]laintiffs secured their judgments against Iran." *Id.* at 999. Therefore, the plaintiffs were ultimately attempting "to establish liability directly on the part of a new party." *Id.* at 1000 (citation omitted). The Second Circuit held that ancillary jurisdiction cannot extend to such an attempt. *Id.* Rather, "a post-judgment enforcement proceeding against an instrumentality of the foreign sovereign judgment debtor cannot be supported by ancillary jurisdiction from the proceeding in which the judgment was issued, but must instead have an 'independent

basis for jurisdiction.'" *Id.* at 1000 n.5 (citing *Peacock*, 516 U.S. at 355). Because the plaintiffs' attempt to shift liability fell "outside the scope of the district court's ancillary jurisdiction, the district court lacked subject matter jurisdiction" to order turnover of Bank Markazi's assets regardless of whether Bank Markazi could be considered Iran's alter ego. *Id.* at 1001.

Etrak asserts that *Peacock* is "inapposite" because Etrak has "filed no new action and asserted no new claim." Mot. at 17. But that is purely semantics. Etrak's reliance on an alter ego theory to reach the assets of NOC to satisfy the debts of Libya is functionally the same as using alter ego to shift liability on the judgment to NOC. *See Casa Express Corp. v. Bolivarian Republic of Venezuela*, 158 F.4th 1176, 1186-89 (11th Cir. 2025) (finding no ancillary jurisdiction to execute on properties of third-party defendants to satisfy judgment against judgment debtor where the third-parties were not already obligated to pay judgment).

Finally, Etrak incorrectly asserts that NOC's *Peacock* arguments provide no basis for appeal because they supposedly go to "the merits of a future ruling" addressing "whether the district court may ultimately enforce Etrak's subpoena." Mot. at 8, 16-17. Not so. *Peacock* addresses whether the district court has subject matter jurisdiction in the first place to shift liability to NOC – not to a factual determination of NOC's alter ego status on the merits.

## CONCLUSION

For the foregoing reasons, NOC respectfully requests that the Court deny Etrak's Motion to Dismiss.

Dated: Washington, D.C.
November 19, 2026

CURTIS, MALLET-PREVOST,
COLT & MOSLE, LLP

/s/ *Joseph D. Pizzurro*
Joseph D. Pizzurro (D.C. Bar No. 468922)
Juan O. Perla (D.C. Bar No. 1660389)
Robert J. Groot (D.C. Bar No. NY0700)
1875 K Street NW, Suite 425
Washington, D.C. 20006
(202) 452-7373
jpizzurro@curtis.com
jperla@curtis.com
rgroot@curtis.com

*Attorneys for Non-Party-Appellant*
*National Oil Corporation of Libya*

# COMBINED CERTIFICATIONS

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2026, I caused the foregoing brief to be filed with the Clerk of Court for the United States Court of Appeals for the District of Columbia Circuit by using the Court's CM/ECF system. I further certify that service was accomplished on all parties via the Court's CM/ECF system.

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A), because it contains 4,750 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). The foregoing brief also complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportional typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Joseph D. Pizzurro*

Joseph D. Pizzurro
(D.C. Bar No. 468922)
1875 K Street NW, Suite 425
Washington, D.C. 20006
Tel.: (202) 452-7373
Fax: (202) 452-7333
Email: jpizzurro@curtis.com